48 A.3d 362

VLAD Y. MAKUTOFF, APPELLANT, v. BOARD OF REVIEW AND SOCIETY GENERAL, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 30, 2012—Decided July 23, 2012.

Before Judges PARRILLO, GRALL and ALVAREZ.

*Vlad Y. Makutoff,* appellant pro se.

*Jeffrey S. Chiesa,* Attorney General, attorney for respondent Board of Review (*Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Alan C. Stephens,* Deputy Attorney General, on the brief).

Respondent Society General has not filed a brief.

The opinion of the court was delivered by

ALVAREZ, J.A.D.

Vlad Y. Makutoff, who is self-represented, appeals from the January 24, 2011 final decision of the Board of Review of the

Department of Labor (Board). The Board found him ineligible for unemployment benefits because he was not "available for work," a requirement of *N.J.S.A.* 43:21–4(c). This unavailability results from his limited work authorization, issued by the Department of Homeland Security (DHS), under the North American Free Trade Agreement (NAFTA). *See* 19 *U.S.C.A.* §§ 3301–3473; 8 *U.S.C.A.* § 1184(e)(2); 8 *U.S.C.A.* § 1101(a)(15)(H). In addition to being found ineligible, Makutoff was ordered to reimburse the unemployment benefits paid to him. We affirm.

The Deputy Director of the Division of Unemployment and Disability Insurance (Director) informed Makutoff that he was ineligible, and demanded a return of benefits, by letter dated December 30, 2008. Makutoff appealed, and the Appeal Tribunal initially reversed the Director. The Director then appealed to the Board, which remanded the matter for additional testimony to clarify Makutoff's employment status. Hearings were conducted on October 22, 2009, and February 2, 2010, as a result of which the Tribunal affirmed the Director's decision denying benefits. Makutoff appealed to the Board, which affirmed on January 24, 2011.

An explanation of the legal context developed during the second Appeal Tribunal proceeding is warranted. Makutoff is a Canadian citizen holding a degree in economics, who has been employed in the United States as an accountant. DHS must issue written work authorization before he, like any other person not a citizen of this country who is a non-immigrant professional, can accept any position in the United States. *See* 8 *U.S.C.A.* § 1184(e)(2); 8 *C.F.R.* § 214.6 (2008). Such authorization was granted to Makutoff when he was accorded "trade NAFTA" (TN) status from September 13, 2008, through September 13, 2009. To obtain the designation, however, Makutoff had to present the appropriate documentation provided by his prospective employer Society General (SG) and apply for admission with a DHS officer at a port-of-entry, international airport, or pre-clearance/pre-flight station. *See* 8 *U.S.C.A.* § 1184(e)(2); 8 *C.F.R.* § 214.6(d) (2004); North

American Free Trade Agreement, Dec. 17, 1992, 32 I.L.M. 289 art. 1603 app. 1603.D.1.

Once a non-immigrant professional, such as Makutoff, obtains the necessary authorization, he or she is permitted to work only for that identified employer. In other words, Makutoff was only authorized to work in the United States for SG. *See ibid.* Makutoff was laid off by SG on October 21, 2008, and according to the record presented on appeal, received unemployment benefits for the week ending November 1, 2008, in the amount of $560.[1]

During the second hearing, the Appeal Tribunal also considered a letter dated February 24, 2009, written by M.F. Global Holdings USA, Inc. (Global), requesting approval from DHS to retain Makutoff's services for three years during which he would "perform the professional duties of a [b]usiness [a]nalyst functioning in the capacity of an [e]conomist[,]" with a start date of March 2, 2009.[2] The letter, written by Global's attorney, is addressed to the "United States Customs and Border Protection[,] U.S./Canadian Border. . . ." Makutoff asserts that the letter is nothing more than a job offer, while the Board contends that Global provided the letter in order to obtain authorization from DHS to employ Makutoff.

Makutoff also alleges that during the Appeal Tribunal hearings poor phone reception resulted in significant distortions and omissions in the record, and that the hearings should have been postponed for this reason. Additionally, he claims that a conflict of interest resulted when the same examiner conducted both the initial and remand Appeal Tribunal hearings. Lastly, Makutoff avers that the unemployment benefits "safety net" should be

---

[1] Makutoff attached to his reply brief a Department of Labor demand for reimbursal in the amount of $9250 paid from October 19, 2009, to February 28, 2010. This issue is not properly before us as the only refund addressed at the hearings was for benefits paid for the week ending November 1, 2008.

[2] A new form and supporting documentation must be filed with DHS with each change of employer. 8 *C.F.R.* § 214.6(i)(1) (2009).

extended to him because unemployment taxes were deducted from his pay at SG.

In any event, Makutoff's points of error are immaterial to the issue presented by these facts. The real question is whether Makutoff's status between sponsoring employers made him "available for work" within the meaning of *N.J.S.A.* 43:21–4(c). We conclude it does not.

■■■ The burden of proof rests upon the claimant to establish his or her right to unemployment compensation. *Brady v. Bd. of Review,* 152 *N.J.* 197, 218, 704 *A.*2d 547 (1997). Our standard of review of agency determinations is limited. *See In re Stallworth,* 208 *N.J.* 182, 194, 26 *A.*3d 1059 (2011); *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999); *Brady, supra,* 152 *N.J.* at 210, 704 *A.*2d 547. We defer to such decisions, unless upon consideration they appear to be arbitrary, capricious, or unsupported by substantial credible evidence in the record as a whole. *See Russo v. Bd. of Trs., Police & Firemen's Retirement Sys.,* 206 *N.J.* 14, 27, 17 *A.*3d 801 (2011); *In re Carter,* 191 *N.J.* 474, 482, 924 *A.*2d 525 (2007). We determine whether the agency's findings could reasonably have been reached on sufficient credible evidence in the record, "considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." *Taylor, supra,* 158 *N.J.* at 656, 731 *A.*2d 35 (quoting *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965)).

When reviewing agency determinations, we do not " 'substitute [our] independent judgment for that of [an] administrative' agency, such as the [Board], 'where there may exist a difference of opinion concerning the evidential persuasiveness of the relevant [proofs].' " *In re Certificate of Need Granted to the Harborage,* 300 *N.J.Super.* 363, 379, 693 *A.*2d 133 (App.Div.1997) (quoting *First Sav. & Loan Ass'n v. Howell,* 87 *N.J.Super.* 318, 321–22, 209 *A.*2d 343 (App.Div.1965), *certif. denied,* 49 *N.J.* 368, 230 *A.*2d 400 (1967) (alterations in original)). Furthermore, we should not " 'weigh the evidence, determine the credibility of witnesses, draw inferences and conclusions from the evidence, or resolve conflicts therein.' "

*Ibid.* (quoting *De Vitis v. N.J. Racing Comm'n,* 202 *N.J.Super.* 484, 489–90, 495 *A.*2d 457 (App.Div.), *certif. denied,* 102 *N.J.* 337, 508 *A.*2d 213 (1985)).

■ Only when the agency's findings are clearly mistaken and " 'so plainly unwarranted that the interests of justice demand intervention and correction' " should a reviewing court " 'make its own findings and conclusions.' " *Campbell v. N.J. Racing Comm'n,* 169 *N.J.* 579, 587–88, 781 *A.*2d 1035 (2001) (quoting *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 588, 538 *A.*2d 794 (1988)).

■ We "should give considerable weight to a state agency's interpretation of a statutory scheme that the legislature has entrusted to the agency to administer." *In re Election Law Enforcement Comm'n, Advisory Opinion No. 01–2008,* 201 *N.J.* 254, 262, 989 *A.*2d 1254 (2010) (citing *Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys.,* 192 *N.J.* 189, 196, 927 *A.*2d 543, (2007)). This is due to the "experience and specialized knowledge" the agency brings "to its task of administering and regulating a legislative enactment within its field of expertise." *Ibid.* This deference is appropriate unless the agency's interpretation is "plainly unreasonable." *Ibid.* (quoting *Reilly v. AAA Mid–Atlantic Ins. Co. of N.J.,* 194 *N.J.* 474, 485, 946 *A.*2d 564 (2008)).

The goal of statutory construction is to determine the legislature's intent. *State v. Gelman,* 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008) (citing *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005)). This means we give words their "ordinary and common-sense meaning." *Ibid.* (citing *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039). If this is possible, our task is complete. Only if it is not possible, do we then turn to "extrinsic aids." *Ibid.* (citing *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039).

■ Makutoff contends that since his authorization to work with SG did not expire until September 13, 2009, he "was able and available for work for at least one employer during the period of unemployment[,]" and that availability to one employer makes him eligible for benefits. We concur with the Director's conclusion

that availability for hire by one employer does not meet the statutory requirement. The ordinary and commonsense meaning of the words "available for work" means more than "available for work" by one employer.

Makutoff also contends that the Director has confused his status with that of an H1–B visa holder, 8 *U.S.C.A.* § 1101(a)(15)(H)(i)(b), and that any new employer wishing to hire him need not file a "form 1129" with DHS. While the Division did incorrectly cite to H1–B visa provisions, Makutoff's claim that a new employer need not file Form I–129 with DHS is mistaken. *See* 8 *C.F.R.* § 214.6(i)(1) (2009) (requiring that a "new employer file a Form I–129 with appropriate supporting documentation[.]").

Furthermore, the Board's reading of the Global letter is correct. The document was clearly a request for DHS authorization to hire Makutoff, not a job offer, and supports the Board's position that Makutoff was not "available for work." *See N.J.S.A.* 43:21–4(c). Since Makutoff needed DHS approval before he could even accept Global's offer of employment, he was not available for work after his termination by SG because he needed to again solicit the approval of DHS.

█ If Makutoff was prohibited from being hired by any other employer besides SG unless DHS approval was obtained, he was patently not available for work. "Available for work" means a job seeker can be hired on the spot, not that he or she is eligible to apply for authorization by the federal government in order to accept a position with an identified employer. *See also Matter of Cale (Commissioner of Labor)*, 46 *A.D.*3d 1065, 847 *N.Y.S.*2d 296 (2007) (a claimant who was in the United States on a TN visa was not "available to work" because, upon the termination of her position with her authorized employer, she was "not authorized to seek employment with a different employer until she obtained another visa."); *In re Claim of Graif*, 250 *A.D.*2d 1012, 673 *N.Y.S.*2d 261, 262 (1998) (a mere job offer would be insufficient for collection of unemployment benefits, as another TN visa was required before a claimant could be considered available for work).

The Director's commonsense reading of *N.J.S.A.* 43:21–4(c) is entitled to the deference accorded to it by law. Makutoff was not available for work once terminated by SG, is therefore ineligible for benefits, and is required to reimburse the $560 already paid to him.

Affirmed.