NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1420-15T1

GARY HOLMES, III,

    Appellant,

v.

BOARD OF REVIEW and
AUTOZONERS, LLC,

    Respondents.

_____

Submitted February 7, 2017 — Decided  March 21, 2017

Before Judges Fisher and Leone.

On appeal from the Board of Review, Department of Labor, Docket No. DKT00060289.

Gary Holmes, III, appellant pro se.

Christopher S. Porrino, Attorney General, attorney for respondent Board of Review, (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Tasha Bradt, Deputy Attorney General, on the brief).

Respondent AutoZoners, LLC has not filed a brief.

PER CURIAM

Claimant Gary Holmes III (Holmes) appeals the September 21, 2015 decision by the Board of Review (Board) affirming the denial of unemployment benefits after his termination for severe misconduct. We affirm.

I.

The following facts are derived from testimony heard by the Appeal Tribunal (Tribunal). Beginning in February 2012, Holmes was employed as a full-time parts manager at an AutoZone retail store.[1] He held this position until May 14, 2015, when he was terminated for unauthorized removal or consumption of company property without payment. Specifically, Holmes was discharged for taking ten bottles of water over a period of approximately three years, resulting in a loss of $16.90 for the retail store.

Holmes filed a claim for unemployment benefits. The Deputy Director of Unemployment and Disability Insurance ("Deputy") determined Holmes was disqualified from receiving unemployment benefits on the grounds that he was terminated as a result of "severe misconduct connected with the work." Holmes appealed to the Tribunal, which held a telephonic hearing on July 13, 2015.

---

[1] "AutoZone" is an auto parts retail chain. Holmes's employer was AutoZoners, LLC, a wholly owned subsidiary of AutoZone Stores, Inc. responsible for leasing employees to AutoZone retail stores. We refer to both entities as "AutoZone." Diaz v. AutoZoners, LLC, 484 S.W.3d 64, 71 (Mo. Ct. App. 2015).

At the hearing, AutoZone's Regional Loss Manager, Sean Finegan, testified as follows. He and the District Manager presiding over Holmes's store discovered Holmes's misconduct during an unrelated loss prevention investigation after a returned battery went missing. During the course of the investigation, Finegan and the District Manager interviewed all the employees working in the store that day. During his interview, Holmes admitted to taking the ten bottles of water without paying for them. Holmes was discharged shortly after the interview.

Finegan also testified Holmes knew stealing the bottles of water was a violation of company policy. The company handbook bars the "unauthorized possession or removal of . . . AutoZone's property include[ing] but not limited to merchandise." The handbook stated that "AutoZone has zero tolerance for any dishonest activity." As an employee of AutoZone, Holmes was required to acknowledge each year that he received and read the handbook.

Holmes testified at the hearing before the Tribunal. Holmes confirmed he read and acknowledged AutoZone's company policy in the handbook regarding theft of company merchandise. Holmes conceded he signed a statement provided to him after his interview, which explicitly stated that "[o]ver the three years of" employment with AutoZone "I took ten bottles of water without paying for it." Holmes initially testified that he admitted to taking the ten

3                                                                                    A-1420-15T1

bottles of water, but that he merely forgot to pay for them when he took them. Holmes later testified he "never took bottles of water without authorization."

On July 13, 2015, the Tribunal affirmed the Deputy's denial of unemployment benefits. Holmes appealed to the Board of Review. The Board agreed with the Tribunal's findings of fact and opinion, and affirmed. Holmes appeals.

## II.

We must hew to our "limited" standard of review. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "'[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs.'" Ibid. (citation committed). "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. Therefore, our review "is limited to determining whether the agency acted arbitrarily, capriciously, or unreasonably." Lourdes Med. Ctr. of Burlington Cnty. v. Bd. of Review, 197 N.J. 339, 360 (2009).

Prior to 2010, the Unemployment Compensation Law, N.J.S.A. 43:21-1 to -24.30, included only two levels of misconduct which could disqualify an individual from unemployment benefits:

misconduct and gross misconduct.  N.J.S.A. 43:21-5(b) (2007); see Silver v. Bd. of Review, 430 N.J. Super. 44, 48 (App. Div. 2013) (tracing the evolution of the statute).  Misconduct results in an eight-week disqualification from unemployment benefits.  N.J.S.A. 43:21-5(b).  Gross misconduct requires "an act punishable as a crime" and results in complete disqualification for benefits. Silver, supra, 430 N.J. Super. at 48.

N.J.S.A. 43:21-5(b) was amended in 2010 to include an intermediate level of misconduct, termed "severe misconduct." Disqualification from benefits for severe misconduct remains in effect until the individual becomes reemployed, works at least four weeks, and reaches a certain earnings amount.  N.J.S.A. 43:21-5(b) (2010).  The statute does not comprehensibly define severe misconduct, but does provide examples of what may constitute severe misconduct.

> [R]epeated violations of an employer's rule or policy, repeated lateness or absences after a written warning by an employer, falsification of records, . . . misuse of benefits, misuse of sick time, abuse of leave, theft of company property, . . . theft of time, or where the behavior is malicious and deliberate but is not considered gross misconduct as defined in this section.
>
> [N.J.S.A. 43:21-5(b) (emphasis added).]

In Silver, supra, we noted that the existing regulations, promulgated before the 2010 statutory amendment, provided: "For

an act to constitute misconduct, it must be improper, intentional, connected with one's work, malicious, and within the individual's control, and is either a deliberate violation of the employer's rules or a disregard of standards of behavior which the employer has the right to expect of an employee." 430 N.J. Super. at 52-53 (quoting N.J.A.C. 12:17-10.2(a)(2003)). We held "[i]t would make no sense to allow for conduct with a lower level of culpability (such as mere inadvertence or negligence) to qualify as severe misconduct[.]" Id. at 55. Thus, we construed the two examples of severe misconduct quoted above as requiring acts done "intentionally, deliberately, and with malice." Ibid. However, the Silver court made clear "repetitive violation . . . may justify a reasonable inference that the employee's disregard was deliberate and in that sense, malicious." Id. at 57.

The regulations were amended by 47 N.J.R. 1009(a), effective May 18, 2015. In response to Silver, this amendment repealed and replaced N.J.A.C. 12:17-10.2 (2003); defined "severe misconduct" as "an act which (1) constitutes 'simple misconduct,' as that term is defined in this section; (2) is both deliberate and malicious; and (3) is not 'gross misconduct,'" N.J.A.C. 12:17-2.1; and incorporated the statutory examples of severe misconduct, ibid. See 46 N.J.R. 1796(a); 47 N.J.R. 1009(a). The Board cites the new

regulations, which became effective just four days after Holmes's termination.

We need not decide whether the 2003 or 2015 regulations govern here, because the evidence supported the Board's finding that Holmes's conduct fell within the statutory examples of severe misconduct, and was intentional, deliberate, and malicious.

III.

Here, the Tribunal properly found "the claimant was discharged for theft in the amount of $16.90" and that "[h]e admitted to his action" of causing a loss to AutoZone when he took ten bottles of water without paying for them over three years. The evidence also showed Holmes was aware of AutoZone's policy manual, which detailed the company's prohibitions against the unauthorized possession or removal of company merchandise, and its zero tolerance policy.

Holmes argues he was wrongfully accused of stealing a missing battery, and deceived into confessing he stole the bottles of water. However, Holmes was free to leave the interview at any time, and he instead voluntarily agreed to make a statement and knowingly signed a written statement. The Tribunal could properly credit his statement and find that his taking without paying was intentional. We give "'due regard to the opportunity of the one who heard the witnesses to judge [] their credibility.'" Makutoff

v. Bd. of Review, 427 N.J. Super. 218, 223 (App. Div. 2012) (citation omitted).

Thus, Holmes admitted to both "theft of company property" and "repeated violations" of AutoZone's company policy, both examples of severe misconduct in N.J.S.A. 43:21-5(b). Additionally, his "repetitive violation[s] . . . justif[ied] a reasonable inference that his disregard of company policies was deliberate and in that sense malicious." Silver, supra, 430 N.J. Super. at 55, 57. Therefore, Holmes's actions rose to the level of severe misconduct under Silver, N.J.S.A. 43:21-5(b), and the various regulations. The Board's decision was supported by sufficient credible evidence in the record.

We recognize that a theft of ten water bottles, worth $16.90, over three years, is hardly grand larceny. If Holmes's theft had been criminally prosecuted, it would be a disorderly persons offense. N.J.S.A. 2C:20-2(b)(4). Moreover, under the de minimis exception in N.J.S.A. 2C:2-11(b), assignment judges are afforded the discretion to dismiss a criminal prosecution if they find the defendant's conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]" Such an exception has been applied in some criminal theft cases. See State v. Smith, 195 N.J. Super. 468

(Law Div. 1984) (applying the de minimis exception where a student stole three pieces of gum valued at fifteen cents per piece). However, N.J.S.A. 2C:2-11 expressly applies only in a criminal "prosecution." Ibid. It "does not apply to persons charged with juvenile delinquency," let alone to civil matters such as this. State v. I.B., 227 N.J. Super. 362, 367 (App. Div. 1988).

N.J.S.A. 43:21-5(b) has no de minimis exception, and we decline to create one. Further, even in the criminal context we have cautioned that "attempts to define triviality by a monetary amount are fraught with potential dangers." State v. Evans, 340 N.J. Super. 244, 252 (App. Div. 2001) (finding shoplifting of a $12.90 hair bow was not de minimus). Ruling that an item is of such a low value to be per se trivial "would send the wrong message" which "could be seen as an authorization to shoplift below that amount." Ibid. "For merchants it would be a potential nightmare." Ibid. To create a de minimis exception for Holmes could similarly encourage employee theft of low-value items over extended periods of time. Moreover, as a parts manager, Holmes is not someone who should have a casual attitude about theft of company property.

In affirming the Tribunal's decision, the Board noted Holmes admitted both verbally and in writing that he stole the water bottles. Additionally, the Board noted Holmes "was given a full

and impartial hearing and a complete opportunity to offer any and all evidence." We cannot say the Board acted arbitrarily, capriciously, or unreasonably.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1420-15T1