**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0289-24

NOURELHODA ABRAHIM,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
AND WORKFORCE
DEVELOPMENT,
and BDX SOLUTIONS, INC.,

     Respondents.

_____

Submitted May 7, 2026 – Decided June 12, 2026

Before Judges Marczyk and Bishop-Thompson.

On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 346821.

Nourelhoda Abrahim, self-represented appellant.

Jennifer Davenport, Attorney General, attorney for respondent Board of Review (Deborah E. Wassel, Assistant Attorney General, of counsel; Courtney S. Babb, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Nourelhoda Abrahim appeals from the Department of Labor and Workforce Development (DOL), Board of Review's (Board) May 21, 2025 decision finding her ineligible for unemployment benefits under N.J.S.A. 43:21-5(a). Following our review of the record and the applicable principles, we affirm.

I.

Abrahim was hired by BDX Solutions, Inc. (BDX) in April 2021 as a cardiac analysis technician. She was initially required to report to BDX's facilities for work. However, in December 2021, she requested to work from home due to "extenuating circumstances" and "family problems." BDX granted Abrahim's request and allowed her to work remotely.

In early May 2023, Abrahim's manager instructed her to return to the office by May 15, 2023, because her performance metrics had fallen below company standards. Abrahim asserts she informed her manager she was not comfortable returning to the office due to prior "bullying and discrimination" she had experienced. In addition, she told her manager she did not have consistent, reliable transportation. BDX reiterated it wanted Abrahim to return to the office by May 15 but advised her she would be permitted to work remotely

2

again in August 2023, and it would work with her to help improve her metrics. Abrahim never returned to the office.

In late May 2023, Abrahim filed an unemployment claim with the DOL. In June 2023, a DOL deputy mailed Abrahim two Notice of Determination letters. The first letter stated she was ineligible for benefits from May 28, 2023, under N.J.S.A. 43:21-4(c)(1), because she was "not available for work." The second letter indicated Abrahim was disqualified from benefits from May 14, 2023, under N.J.S.A. 43:21-5(a), because she "left work voluntarily" on May 18, 2023. Abrahim thereafter appealed to the Appeal Tribunal (Tribunal).

The Tribunal conducted a telephonic hearing in November 2023. The Examiner stated the issues before the Tribunal were whether Abrahim voluntarily left work, was available to work, and was actively seeking work. The Tribunal determined Abrahim was disqualified from benefits from May 14, 2023, under N.J.S.A. 43:21-5(a), for voluntarily leaving her job. It found Abrahim's discrimination claims unpersuasive, noting she had been working remotely since December 2021, and the more likely reason she failed to return to work was a lack of transportation. As to Abrahim's disqualification for not being available for work, the Tribunal stated, "[i]n view of the period of

A-0289-24

disqualification imposed, [May 14, 2023,] the issue of [Abrahim's subsequent] availability" was not relevant.

Thereafter, Abrahim appealed, and the Board affirmed the Tribunal's decision on September 12, 2024. Abrahim next appealed the Board's decision to us. She moved to identify "[n]ewly [p]rovided [e]vidence from [BDX]"—received in October 2024, following the Board's decision—which we treated as a motion to supplement the record. We granted the motion, stating: "After review of the moving papers, we conclude certain evidence unadduced in the administrative proceedings . . . may be material to the issues on appeal." Accordingly, we ordered the record on appeal be supplemented with the following documents: a "[l]etter drafted [on] October 2, 2024[,] from [BDX] to [Abrahim]"; and "[a]ttachments to [the] October 2, 2024 letter, including [an] email thread – [four] pages." We remanded the matter to the Board "to make additional findings of fact after review of those documents" and to "issue a modified final administrative decision."

The Board subsequently reopened the matter, set aside its prior decision, and remanded the matter to the Tribunal "for a hearing to address the newly submitted documentary evidence." It further indicated, upon completion of the

hearing, the matter would be returned to the Board "to issue its modified final decision[,] as instructed by the [c]ourt."

The hearing before the Tribunal took place in April 2025. The Examiner stated the purpose of the hearing was to "put the additional documentation that [Abrahim] sent to [the Appellate Division] . . . on the record so that the Board . . . c[ould] further review the case." The first document was a letter addressed to Abrahim from a human resource manager at BDX, dated October 2, 2024. It stated, "[t]his letter serves as [the] official notification" of Abrahim's "termination" from BDX, "effective May 23[, 2023]."

The second document was comprised of an email thread from May 2023 between Abrahim and a BDX representative. In the first email, sent by Abrahim on May 22, she discussed a workplace dispute, expressed she felt she had been retaliated against, and requested BDX help her find a "new remote position" in the same field "as soon as possible." The following day, May 23, Abrahim again requested assistance in finding a new position. Later that same day, Abrahim emailed the BDX representative again, stating, "I will be telling my interviewers moving forward that I resigned from this role."

The matter then returned to the Board so it could issue a modified final decision. On May 21, 2025, the Board issued its decision, again affirming the

A-0289-24

November 29, 2023 Tribunal decision, finding Abrahim ineligible for benefits under N.J.S.A. 43:21-5(a). However, the Board modified the disqualification date from May 14, 2023, to May 21, 2023, noting Abrahim "was not separated from her employment until May 23, 2023." The Board further stated it had "carefully reviewed" the new evidence Abrahim submitted, but determined this evidence "did not significantly alter the facts developed in the initial hearing."

## II.

## A.

On appeal, Abrahim asserts N.J.S.A. 43:21-5(a) disqualifies only those who "leave work voluntarily without good cause attributable to the work." She contends the record demonstrates this was an "employer-driven separation," and BDX "rescinded a longstanding remote [work] accommodation[ and] offered no path forward." Abrahim insists she desired to continue working remotely, and the Board's conclusion she "voluntarily quit" is "unsupported by substantial credible evidence."

Abrahim also argues, "[e]ven if the separation were deemed 'voluntary,' the evidence shows imminent termination, which constitutes good cause." In support of this point, Abrahim asserts the Examiner, at the April 2025 hearing, acknowledged BDX's October 2, 2024 termination letter indicated Abrahim was

6

terminated on May 23, 2023. Accordingly, she concludes, "resignation in the face of certain discharge is not a voluntary quit; it is separation for good cause attributable to the work."

"Our review in an appeal from a final decision of an administrative agency is limited." Newman v. Bd. of Rev., Dep't of Lab., 434 N.J. Super. 483, 488 (App. Div. 2014). A reviewing court "must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)) (internal quotation marks omitted). "When reviewing agency determinations, we do not 'substitute [our] independent judgment for that of [an] administrative' agency, . . . where there may exist a difference of opinion concerning the evidential persuasiveness of the relevant [proofs]." Makutoff v. Bd. of Rev. & Soc'y Gen., 427 N.J. Super. 218, 223 (App. Div. 2012) (alterations in original) (quoting In re Certificate of Need Granted to the Harborage, 300 N.J. Super. 363, 379 (App. Div. 1997)) (additional internal quotation marks omitted).

"An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable,

A-0289-24

or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007). In deciding whether an agency's actions are arbitrary, capricious, or unreasonable, a reviewing court must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

In other words, "[t]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather[,] whether the factfinder could reasonably so conclude upon the proofs." Messick v. Bd. of Rev., 420 N.J. Super. 321, 324 (App. Div. 2011) (quoting Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997)). Therefore, "[i]f the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Brady, 152 N.J. at 210 (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). "Only when the agency's findings are clearly mistaken and 'so plainly

A-0289-24

unwarranted that the interests of justice demand intervention and correction' should a reviewing court 'make its own findings and conclusions.'" Makutoff, 427 N.J. Super. at 224 (quoting Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587-88 (2001)) (additional internal quotation marks omitted).

The burden of proof rests with the employee to establish a right to collect unemployment benefits. Brady, 152 N.J. at 218. Under N.J.S.A. 43:21-5(a), a person is ineligible for unemployment benefits if they leave work voluntarily, without good cause attributable to the work. N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." "The decision to leave employment must be compelled by real, substantial[,] and reasonable circumstances[,] not imaginary, trifling[,] and whimsical ones." Domenico v. Bd. of Rev., Dep't of Lab. & Indus., 192 N.J. Super. 284, 288 (App. Div. 1983). "Mere dissatisfaction with working conditions[,] which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Ibid. (quoting Medwick v. Bd. of Rev., Div. of Emp. Sec., Dep't of Lab. & Indus., 69 N.J. Super. 338, 345 (App. Div. 1961)). A claimant who leaves work for a

A-0289-24

personal reason, no matter how compelling, is subject to disqualification. Self, 91 N.J. at 460.

We conclude the Board did not err in its determination Abrahim voluntarily left her position. At the initial hearing in November 2023, Abrahim conceded on the record that after BDX requested she return to working on-site by May 15, 2023, she "ended up . . . voluntarily leaving after that." She stated she told BDX she "did[ not] feel comfortable" returning to the office. Moreover, on May 22, 2023, after the return-to-work deadline had passed and Abrahim had not returned to work, she emailed a BDX representative, stating, "could you please do your best to help me find a new remote position in this field as soon as possible?" Abrahim also stated in another email to the representative, "I will be telling my interviewers moving forward that I resigned from this role." In addition, she stated on the record she signed a severance agreement with BDX in or about May 2023, after she declined to return to working on-site. Abrahim also said her official date of resignation was May 28, 2023, and she had sent BDX correspondence indicating the same.

As to Abrahim's allegations regarding imminent termination, "[m]ere speculation about job stability is insufficient to establish good cause."

A-0289-24

Fernandez v. Bd. of Rev., 304 N.J. Super. 603, 606 (App. Div. 1997). This court has explained:

> [T]he surrounding circumstances at the time of voluntarily resigning must demonstrate a lack of suitable continuing work either concurrently or at a discernible and proximate point in time, together with statements or actions of the employer showing a very strong likelihood of imminent layoff. The circumstances must be so compelling as to indicate a strong probability that fears about the employee's job security will in fact materialize, that serious impending threats to [their] job will be realized, and that the employee's belief that [their] job is imminently threatened is well founded.
>
> [Ibid.]

In this case, Abrahim's assertion of imminent termination is nothing more than mere speculation, which is insufficient to establish good cause. See ibid. There was neither "a lack of suitable continuing work" nor statements or actions by BDX "showing a very strong likelihood of imminent layoff." See ibid. In fact, BDX's statements and actions demonstrate the opposite, as it accommodated Abrahim several times throughout her employment. Specifically, BDX allowed her to work remotely for approximately a year-and-a-half and reduced her schedule from working five days per week to four days, while maintaining her full-time status and pay. Moreover, in May 2023, when BDX requested Abrahim return to working on-site, it indicated it "was only

A-0289-24

temporary" and she could return to working remotely in August 2023. Abrahim conceded on the record that in May 2023, "[BDX] just wanted to work with [her] to improve." She also acknowledged her reasons for leaving were due to the revocation of her remote work privileges and her inability to comply with the in-office schedule. These are personal reasons, not reasons attributable to work. We are also unpersuaded the October 2, 2024 termination letter demonstrated Abrahim was involuntarily discharged. Rather, read in context with the Board's decision, it is more appropriately characterized as a date of separation notice.

In sum, there was ample evidence in the record to support the Board's determination Abrahim "left work voluntarily without good cause attributable to such work," and the Board reasonably rejected her claim of imminent termination. We discern no basis to disturb the Board's findings.

## B.

Abrahim further contends BDX's rescission of her remote work was a "[s]ubstantial [c]hange in [c]onditions." She argues, under N.J.S.A. 43:21-5(c) and N.J.A.C. 12:17-11.5, work suitability "requires considering transportation, health, and prior work history/accommodations," and when an employer rescinds a "critical accommodation," such as remote work, without a workable alternative, "the resulting position can be unsuitable." Abrahim asserts, "[a]t

A-0289-24

most," she should have been subjected to a temporary disqualification under N.J.S.A. 43:21-5(c), rather than an indefinite denial under N.J.S.A. 43:21-5(a).

Under New Jersey's Unemployment Compensation Law, "a claimant is disqualified for unemployment benefits if [they] do[] not accept available suitable work." Goodman v. London Metals Exch., Inc., 86 N.J. 19, 37 (1981). Accordingly, N.J.S.A. 43:21-5(c)(1) provides, in relevant part:

> In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to health, safety, and morals, the individual's physical fitness and prior training, experience and prior earnings, the individual's length of unemployment and prospects for securing local work in the individual's customary occupation, and the distance of the available work from the individual's residence.

An employee who rejects an offer for suitable work must establish "good cause" in order to remain eligible for unemployment benefits. See N.J.A.C. 12:17-11.4. In this context, "good cause" means "any situation over which the claimant did not have control or which was so compelling as to prevent the claimant from accepting work." Ibid. "In order to establish good cause, the claimant must have made a reasonable attempt to remove the restrictions pertaining to the refusal." Ibid.

As to an employee's issues with transportation, which Abrahim mentioned in her brief and at the initial hearing, "[i]t is clear that when 'commuting

13

problems' arise solely from the personal circumstances of the worker, unrelated to an alteration in the terms or conditions of employment, the worker who voluntarily quits [their] job cannot show 'good cause' qualifying [them] for benefits." Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 544-45 (2008); see also Self, 91 N.J. at 460. In other words, where the employer "did nothing to increase the commuting problems of [the] claimant[]," meaning the reason the employee was "unable to get to work was not work-related, but personal," our courts have concluded "the lack of transportation was not 'good cause attributable to' their employment within the purview of the statute." Id. at 545 (quoting Self, 91 N.J. at 460). Furthermore, "[m]ere dissatisfaction with working conditions[,] which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Heulitt v. Bd. of Rev., Dep't of Lab., 300 N.J. Super. 407, 414 (App. Div. 1997) (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 54 (App. Div. 1964)).

In applying N.J.S.A. 43:21-5(c)(1)—the factors for suitable work—to this case, the record demonstrates Abrahim was employed as a cardiac analysis technician at BDX, which entailed analyzing patients' EKG statistics and drafting reports reflecting her findings. She admitted she was initially hired to work on-site and was only given the opportunity of remote work as a "privilege."

When BDX asked Abrahim to return to the office in May 2023, her position was to remain the same. Further, when BDX requested she return to working on-site, it indicated it "was only temporary" and she could return to working remotely in August 2023. Thus, BDX's rescission of Abrahim's remote work privilege in May 2023 did not constitute a substantial change in conditions, and therefore, the work remained suitable.

As to Abrahim's claims of transportation issues, those issues arose solely from her personal circumstances rather than from an alteration in the terms or conditions of her employment. This is because BDX did nothing to increase Abrahim's commuting problems. She was initially hired to work on-site, was granted the accommodation of remote work, and was simply asked to temporarily return to working on-site. BDX did not alter any terms or conditions of her employment. Further, at her initial hearing, Abrahim stated, "I did[ not] have consistent transportation." Under New Jersey Unemployment Compensation Law, Abrahim's lack of transportation is not good cause attributable to her employment. See Utley, 194 N.J. at 544-45.

## C.

Lastly, Abrahim contends the Examiner initially indicated her fiancé could provide a closing statement but "then barred it." She argues "[t]his

inconsistency, coupled with [her] concussion-related cognitive issues, denied [her] a fair opportunity to present corroborative evidence." Abrahim asserts N.J.A.C. 1:12-14.1 "requires fair procedures and assistance to self-represented parties," and the Tribunal's "combination of restrictive rulings and failure to reasonably accommodate" her undermined due process.

"[S]tate statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process." Rivera v. Bd. of Rev., N.J. Dep't of Lab., 127 N.J. 578, 584 (1992) (quoting Wilkinson v. Abrams, 627 F.2d 650, 664 (3rd Cir. 1980)); see also Garzon v. Bd. of Rev., Dep't of Lab., 370 N.J. Super. 1, 9 (App. Div. 2004) (noting New Jersey courts "view an analysis under fairness principles to coincide with a procedural due process analysis"). "The basic requirements of procedural due process are[:] (1) adequate notice; (2) opportunity for a fair hearing[;] and (3) the availability of ultimate review." Agresta v. Bd. of Rev., N.J. Dep't of Lab., 232 N.J. Super. 56, 63 (App. Div. 1989). "'Hearing' in this context means a hearing of evidence and argument, and judgment thereon." In re Masiello, 25 N.J. 590, 600 (1958).

Here, Abrahim was afforded an initial hearing and a subsequent supplemental hearing. The record shows she received Notices of Determination,

16

which stated the reasons she was not eligible for unemployment benefits. Abrahim appealed those determinations, and thereafter, she received several written opinions from the Tribunal and the Board as to the evidence they relied upon and their reasons for finding her ineligible for benefits.

At the initial hearing, Abrahim was given the opportunity to be heard and to present witnesses. In fact, she planned to present her fiancé as her witness, but he failed to appear. Nevertheless, numerous times throughout the hearing, the Examiner informed Abrahim the hearing could be postponed so her witness could testify at a later date. Abrahim, however, refused the offer to postpone each time and told the Examiner she wanted to proceed.

Abrahim was also given the same opportunity at her supplemental hearing in April 2025. At this hearing, her fiancé was in attendance and was prepared to give a statement on her behalf. Though the purpose of this later hearing was only to enter the supplemental documents Abrahim submitted to the court, the Examiner told Abrahim she would allow Abrahim's fiancé to testify if she so wished. The Examiner further stated to Abrahim, "[y]ou will be able to state what you would like to say after I finish[] putting th[e] documentation on the record." However, after the Examiner finished reading the evidence into the record, Abrahim told the Examiner, "I have my own closing statement," and

when directly asked if she wished to give her own closing statement, she responded, "[o]h, absolutely." Abrahim then proceeded to give her closing statement. Additionally, the DOL did not present any witnesses at either hearing, and therefore, Abrahim's right to confront and cross-examine any adverse witnesses was not at issue.

For these reasons, we conclude the Board's decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

18

A-0289-24